Edward E. WESTLAKE,
Petitioner-Appellant,

v.

William LUCAS, Sheriff of Wayne County, et al., Respondents-Appellees.

No. 75–2177.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1976.

Decided June 29, 1976.

Rehearing Denied July 29, 1976.

John R. Urso, Urban Law Clinic, Detroit, Mich., for petitioner-appellant.

W. B. McIntyre, Jr., Adam P. Angelas, Corp. Counsel, Aloysius J. Suchy, Detroit, Mich., for respondents-appellees.

Before CELEBREZZE, MILLER* and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the dismissal of an action brought under 42 U.S.C. section 1983 (1970), by a former inmate at the Wayne County Jail who claims that his constitutional rights were violated when prison authorities denied him medical treatment for a bleeding ulcer. The original complaint was filed *pro se* on November 27, 1973. After counsel was appointed the complaint was amended three times. Each amendment was occasioned by the granting of defense motions for a more definite statement. Fed.R.Civ.P. 12(e). On April 14, 1975, the District Court dismissed the third amended complaint without leave to amend for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In reviewing a dismissal on the pleadings all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176, 1182 (6th Cir. 1975). *See generally* 2 A J. Moore, Federal Practice ¶ 12.08 at 2265–67 (2d ed. 1975) (hereinafter Moore). Dismissals of complaints under the civil rights statutes are scrutinized with special care. *See Azar v. Conley,* 456 F.2d 1382, 1384 n. 1 (6th Cir. 1972); *Lucarell v. McNair,* 453 F.2d 836, 838 (6th Cir. 1972). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief. . . . " Fed.R.Civ.P. 8(a)(2). All a complaint need do is afford the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *See generally* 2 A Moore ¶ 8.02 at 1611. A motion to dismiss under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra* at 45–46,

* The Honorable William E. Miller died on April 12, 1976 and did not participate in this opinion.

78 S.Ct. at 102. *See also Elliot v. Caribbean Utilities Co., Ltd., supra* at 1182. *See generally* 2A Moore ¶ 12.08 at 2273–74.

Throughout the extended amendment process the essence of Appellant's claim has been that he was deprived of needed medical treatment for a bleeding ulcer. Appellant alleges in his complaint that on November 17, 1973 he was incarcerated in the Wayne County Jail while awaiting trial. He informed the jail's admitting personnel that he suffered from an ulcer and requested a special diet and medication. His requests were denied. Although jail officials were aware of his condition and knew that he had received a special diet and medication at another institution, they refused to grant Appellant's requests until ordered to do so by a doctor. Despite his requests for treatment, Appellant was not taken to see a doctor. During the ensuing days Appellant began to suffer stomach pains and abdominal distress. His complaints and requests to see a doctor went unheeded. On November 23, 1973, six days after the initial denial of the special diet and medication, Appellant's condition worsened and he began to vomit blood. When this was brought to the attention of his jailers, the only relief provided was a mild antacid. In response to his requests to see a doctor, he was informed that no doctor was on call during the weekend and that he would have to wait at least two days before he could receive any medical attention. During that period Appellant continued to suffer and his repeated requests for medical assistance went unanswered.

1. The District Judge expressed some reservations on the urgency of Appellant's need for medical care, but he appeared willing to concede this point and base the dismissal on the absence of "tangible residual injury."

2. *See also Shannon v. Lester,* 519 F.2d 76, 79 (6th Cir. 1975). *Accord, Runnels v. Rosendale,* 499 F.2d 733 (9th Cir. 1974); *Dillard v. Pitchess,* 399 F.Supp. 1225 (C.D.Cal.1975); *Inmates of Suffolk County Jail v. Eisenstadt,* 360 F.Supp. 676 (D.Mass.1973), aff'd 494 F.2d 1196 (1st Cir. 1974). Other courts have based a prisoner's right to medical treatment on the

The District Court in ruling on the motions to dismiss accepted the factual allegations in the complaint as true, but held that the complaint was insufficient as a matter of law because Appellant had failed to allege any "tangible residual injury." This phrase was gleaned from discussion in a footnote of *Stiltner v. Rhay,* 371 F.2d 420, 421 n. 3 (9th Cir. 1967), where the Ninth Circuit rejected an inmate's claim that his constitutional rights had been violated by inadequate medical treatment of a chronic back ailment. In distinguishing their case from other cases where a prisoner's constitutional right to medical treatment had been recognized, the *Stiltner* Court observed that the allegations in the other cases shared four common elements: 1.) an acute physical condition, 2.) the urgent need for medical care, 3.) the failure or refusal to provide it, and 4.) tangible residual injury. 371 F.2d at 421 n. 3. The Court noted that Stiltner had failed to allege any of these factors in his complaint, either directly or by implication. *Id.* In this case, the District Court found that Appellant had arguably satisfied the first three criteria[1] but had failed to allege "tangible residual injury." This omission was deemed fatal to his cause of action.

This Court has recognized that under some circumstances the denial of medical care to a prisoner may give rise to a violation of Fourteenth Amendment due process. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 (6th Cir. 1972).[2] In *Fitzke v. Shappell, supra,* at 1076, Judge Miller writing for the Court explained the rationale for this position:

Eighth Amendment's prohibition against cruel and unusual punishment. *See e. g., Newman v. Alabama,* 503 F.2d 1320, 1330 & n. 14 (5th Cir. 1974); *Nelson v. Heyne,* 491 F.2d 352, 354–56 (7th Cir. 1973); *Martinez v. Mancusi,* 443 F.2d 921, 924 (2nd Cir. 1970); *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971); *Coppinger v. Townsend,* 398 F.2d 392, 393 (10th Cir. 1968). The Supreme Court may soon address the issue in *Gamble v. Estelle,* 516 F.2d 937 (5th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1101, 47 L.Ed.2d 311, 44 U.S.L.W. 3471 (February 24, 1976).

The logic of these pronouncements is not difficult to perceive. An individual incarcerated, whether for a term of life for the commission of some heinous crime, or merely for the night to "dry out" in the local drunk tank, becomes both vulnerable *and* dependent upon the state to provide certain simple and basic human needs. Examples are food, shelter, and sanitation. Facilities may be primitive but they must be adequate. Medical care is another such need. Denial of necessary medical attention may well result in disabilities beyond that contemplated by the incarceration itself.

The result may be crippling injury, as alleged here, or . . . the very deprivation of life itself, since, *restrained by the authority of the state,* the individual cannot himself seek medical aid or provide the other necessities for sustaining life and health. [Emphasis in the original.]

That does not mean that every malpractice claim involving a prisoner may be automatically transformed into a cause of action under the civil rights statutes, but it does mean that prison authorities may not be deliberately indifferent to the suffering of prisoners under their care.[3] *See Jones v. Lockhart,* 484 F.2d 1192, 1194 (8th Cir. 1973); *Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir. 1972). As this Court stated in *Fitzke v. Shappell, supra* at 1076:

Thus it is that fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury. This is not to say that every request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care that the state provides. But where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process. [Citations omitted.]

We believe that a prisoner states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury.[4] *See Ingram v. Montgomery County Prison Board,* 369 F.Supp. 873, 874 (W.D. Pa.1974). The Ninth Circuit did not choose to follow a literal reading of the *Stiltner* language in *Runnels v. Rosendale,* 499 F.2d 733, 735–36 (9th Cir. 1974), where the Court held that an inmate's allegation that he was left in severe pain over an extended period of time without the administration of necessary and available analgesic relief was sufficient to withstand a motion to dismiss under Rule 12(b)(6). We agree with the Ninth Circuit that a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering.[5]

---

**3.** A complaint need not allege that prison officials consciously sought to inflict pain on a prisoner by withholding treatment. *See e. g., Runnels v. Rosendale,* 499 F.2d 733, 736 (9th Cir. 1974).

**4.** Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Cf. Schmidt v. Wingo,* 499 F.2d 70, 75 (6th Cir. 1974) (Phillips, J., concurring).

**5.** We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. *See Fitzke v. Shappell, supra* at 1076 n. 4. *See also Jones v. Lockhart, supra* at 1194; *Corby v. Conboy, supra* at 254. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. *See e. g., Pinon v. Wisconsin,* 368 F.Supp. 608 (E.D.Wis.1973). *But cf. Fitzke v. Shappell, supra* at 1076–77 n. 7. Of course, in some

In our view, Appellant has adequately stated a cause of action for deprivation of needed medical care and the District Court was in error in dismissing the case at the pleading stage. Appellant has alleged that he was forced to endure a period of intense discomfort because his pleas for medical assistance went unheeded by his jailers. He should have the opportunity to prove the truth of his allegations at an evidentiary hearing. Appellees should be directed to respond to Appellant's complaint and, should the trier of fact conclude that Appellant's accusations are true, the District Court is empowered to grant complete relief.

Reversed and remanded.

cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all. *See Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970).